**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**

ATTORNEYS FOR APPELLANTS:

Attorney for D.P. and G.P.
**DOUG A. BERNACCHI**
Michigan City, Indiana

Attorney for M.P. and Z.P.
**KELLY A. GIGLI**
Gigli Law Office
North Liberty, Indiana

ATTORNEYS FOR APPELLEES:

Attorneys for Ind. Dept. of Child Services
**SHARON R. ALBRECHT**
Indiana Department of Child Services
South Bend, Indiana

**ROBERT J. HENKE**
DCS Central Administration
Indianapolis, Indiana

Attorney for J.H. and T.H.
**DEBRA VOLTZ-MILLER**
South Bend, Indiana

FILED
Mar 16 2012, 9:28 am
CLERK
of the supreme court,
court of appeals and
tax court

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| IN THE MATTER OF THE TERMINATION OF THE PARENT-CHILD RELATIONSHIP and ADOPTION OF J.P., Minor Child, | ) ) ) ) | |
| M.P. and Z.P., Biological Parents, | ) ) | |
| D.P. and G.P., Grandparents, | ) ) | |
| Appellants-Respondents, | ) ) | |
| vs. | ) ) | No. 71A03-1106-JT-248 |
| INDIANA DEPARTMENT OF CHILD SERVICES, | ) ) ) | |
| Appellee-Petitioner, | ) ) | |
| and | ) ) | |
| J.H. and T.H., Foster Parents, | ) ) | |
| Co-Appellees-Petitioners. | ) | |

**March 16, 2012**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**MAY, Judge**

M.P. (Mother) and Z.P. (Father) (collectively "Parents") appeal the termination of

their parental rights to J.P.  Parents present two issues:

1.      Whether the trial court erred when it did not grant Parents' motion to dismiss

the termination of parental rights petition; and

2.      Whether the trial court erred when it terminated Parents' rights to J.P.

Father's parents, D.P. (Grandfather) and G.P. (Grandmother) (collectively, "Grandparents"),

appeal the denial of their petition to adopt J.P., in which appeal Parents join.  Grandparents

and Parents also appeal the probate court's decision regarding the adoption petition filed by

J.H. and T.H. (collectively, "Foster Parents").

We affirm in part and dismiss in part without prejudice.[1]

**FACTS AND PROCEDURAL HISTORY**

J.P. was born on November 6, 2007, to Parents, who were married.  When he was

approximately four months old, the Department of Child Services (DCS) removed J.P. from

Parents' home because they could not explain a spiral fracture to his arm.  The probate court

---

[1] On January 12, 2012, Grandparents filed a verified motion to remand to take additional evidence.  Our decision her renders that motion moot, and thus it is denied on separate order March 16, 2012.

2

declared J.P. a Child in Need of Services (CHINS). Initially, the court placed J.P. with Grandparents, but then Parents requested the court move J.P. to the maternal grandmother's home. Parents successfully completed the services offered by DCS, reunified with J.P., and were released from supervision in August 2008.

Seven months later, in March 2009, DCS again intervened based on concerns over the Parents' living conditions and J.P.'s physical condition. DCS discovered the Parents' home was very cluttered and there was animal feces on the floor. J.P. had a large bruise and bump on his head, and he appeared very underweight. J.P. was admitted to the pediatric intensive care unit due to malnourishment, and doctors diagnosed him as failing to thrive because at sixteen months old he weighed between sixteen and seventeen pounds. Doctors noted the head bruise, non-accidental bruising on J.P.'s back, and scars consistent with cigarette burns.

The State immediately placed J.P. with Foster Parents, where he remained for the duration of these proceedings. J.H., one of J.P.'s Foster Parents, testified J.P. was "emaciated and weak" when he arrived at Foster Parents' home, "didn't talk," and was unable to walk unassisted. (Tr. III[2] at 76-77.) On petition by DCS, the juvenile court declared J.P. a CHINS and adopted a plan for reunification with Parents. The probate court ordered Parents to participate in individual and family counseling, complete parenting classes, complete a psychological parenting assessment and follow all recommendations, visit

---

[2] We received the transcript in three separately paginated volumes, labeled with the date of each hearing. Therefore, we will refer to the transcript of the February 17, 2011, hearing as "Tr.I," the transcript of the March 11 hearing as "Tr. II," and the transcript of the hearing on March 18, 2011, as "Tr. III." We remind the court reporter this format does not comply with Indiana Appellate Rule 28(A)(2) which requires the transcript "be numbered consecutively regardless of the number of volumes the Transcript requires."

3

with J.P. on a regular basis, and maintain constant contact with DCS. The court ordered Mother to participate in the Young Mom's Self Sufficiency Program.

At first, Parents participated in visitation, but Mother testified she missed "25 – 35%" of the visits. (Tr. I at 14.) The visits were initially fully supervised, then moved to Parents' home where they were partially supervised. At one point, the visits at Parents' home were unsupervised; however, they returned to partially supervised after DCS became concerned about the cleanliness of Parents' house and their ability to properly feed J.P. Starting in August 2010, Parents began missing visits, or were not available at the scheduled times. As a result, the visitation supervisor required a confirmation of each visit. Parents then missed five consecutive visits. Shortly thereafter, the court stopped visits as part of the termination of parental rights process.

On May 13, 2009, Grandparents asked to intervene in J.P.'s CHINS case and to obtain custody of him. Parents objected to Grandparents receiving custody, but the court allowed Grandparents to visit J.P. Grandfather attended most visits, but Grandmother's work schedule prevented her from attending.

On July 12, 2010, DCS filed petitions for the involuntary termination of parental rights to J.P. On October 8, Grandparents filed a petition to adopt J.P., and Parents filed their consents to that proposed adoption. On October 14, Foster Parents filed a petition to adopt J.P. On October 15, the juvenile court consolidated the termination and adoption actions. On November 29, Parents filed a motion to modify the dispositional decree in the CHINS case

4

and requested J.P. be placed with Grandparents. On January 5, 2011, the probate court denied their request.

On February 17, Parents filed a motion to dismiss the termination, which the probate court denied the same day. Testimony regarding the termination and adoptions was presented February 17, March 11, and March 18. At the end of the March 18 hearing, the court directed the parties to file their proposed findings and conclusions with the court by April 25. On May 2, Grandparents requested additional evidence to be considered. DCS objected, and the probate court declined to consider the evidence. On May 11, the court terminated Parents' rights to J.P., denied Grandparents' petition to adopt J.P., and stated its intent to grant Foster Parents' petition to adopt J.P. pending a final hearing. On May 18, the court suspended Grandparents' visitation with J.P. pending the outcome of this appeal.

**DISCUSSION AND DECISION**

Issues Regarding Termination of Parents' Rights

We review termination of parental rights with great deference. *In re K.S., D.S., and B.G.*, 750 N.E.2d 832, 836 (Ind. Ct. App. 2001). We will not reweigh evidence or judge credibility of witnesses. *In re D.D.*, 804 N.E.2d 258, 265 (Ind. Ct. App. 2004), *trans. denied.* Instead, we consider only the evidence and reasonable inferences most favorable to the judgment. *Id.* In deference to the trial court's unique position to assess the evidence, we will set aside a judgment terminating a parent's rights only if it is clearly erroneous. *In re L.S.*, 717 N.E.2d 204, 208 (Ind. Ct. App. 1999), *reh'g denied*, *trans. denied*, *cert. denied* 534 U.S. 1161 (2002).

5

When, as here, a judgment contains specific findings of fact and conclusions thereon, we apply a two-tiered standard of review. *Bester v. Lake Cnty. Office of Family & Children*, 839 N.E.2d 143, 147 (Ind. 2005). We determine first whether the evidence supports the findings and second whether the findings support the judgment. *Id*. "Findings are clearly erroneous only when the record contains no facts to support them either directly or by inference." *Quillen v. Quillen*, 671 N.E.2d 98, 102 (Ind. 1996). If the evidence and inferences support the trial court's decision, we must affirm. *In re L.S.*, 717 N.E.2d at 208.

"The traditional right of parents to establish a home and raise their children is protected by the Fourteenth Amendment of the United States Constitution." *In re M.B.*, 666 N.E.2d 73, 76 (Ind. Ct. App. 1996), *trans. denied*. A trial court must subordinate the interests of the parents to those of the child, however, when evaluating the circumstances surrounding a termination. *In re K.S.,* 750 N.E.2d at 837. The right to raise one's own child should not be terminated solely because there is a better home available for the child, *id.*, but parental rights may be terminated when a parent is unable or unwilling to meet his or her parental responsibilities. *Id*. at 836.

To terminate a parent-child relationship in Indiana, the State must allege and prove:

(A)    that one (1) of the following is true:
      (i)    The child has been removed from the parent for at least six (6) months under a dispositional decree.
      (ii)    A court has entered a finding under IC 31-34-21-5.6 that reasonable efforts for family preservation or reunification are not required, including a description of the court's finding, the date of the finding, and the manner in which the finding was made.
      (iii)    The child has been removed from the parent and has been under the supervision of a county office of family and children or

probation department for at least fifteen (15) months of the most recent twenty-two (22) months, beginning with the date the child is removed from the home as a result of the child being alleged to be a child in need of services or a delinquent child;

(B) that one (1) of the following is true:
(i) There is a reasonable probability that the conditions that resulted in the child's removal or the reasons for placement outside the home of the parents will not be remedied.
(ii) There is a reasonable probability that the continuation of the parent-child relationship poses a threat to the well-being of the child.
(iii) The child has, on two (2) separate occasions, been adjudicated a child in need of services;

(C) that termination is in the best interests of the child; and
(D) that there is a satisfactory plan for the care and treatment of the child.

Ind. Code § 31-35-2-4(b)(2). The State must provide clear and convincing proof of these allegations. *In re G.Y.*, 904 N.E.2d 1257, 1260-61 (Ind. 2009), *reh'g denied*. If the court finds the allegations in the petition are true, it must terminate the parent-child relationship. Ind. Code § 31-35-2-8.

### 1. Parents' Motion to Dismiss

On February 17, 2011, Parents filed a motion to dismiss, alleging:

1. The Petitions for Involuntary Termination of Parent Child Relationship filed against each parent fails [sic] to comply with the requirements of I.C. 31-35-2-4 by omitting the requirements of subsection (b)(3) which states that "[t]he petition must indicate whether at least one (1) of the factors listed in section 4.5(d)(1) through 4.5(d)(3) . . . applies and specify each factor that would apply as the basis for filing a motion to dismiss the petition.
2. That I.C. 31-35-2-4.5(d)(3) applies in the case in that: (A) I.C. 31-34-215.6 [sic] is not applicable to the child; (B) the department has not provided family services to the child, parent, or family of the child, in accordance with applicable provisions of a currently effective case plan prepared under I.C. 31-34-15 or I.C. 31-37-19-1.5, or a permanency plan or dispositional decree approved under I.C. 31-34 or I.C. 31-37; and (C) the services that the department has not provided are substantial

7

and material in relation to implementation of a plan to permit safe return of the child to the child's home.

(Appellants' App. at 89.)

Parents argue "it was clear error for the trial court to summarily deny the motion to dismiss without permitting the presentation of additional evidence and/or argument[,]" (Br. of Appellant Parents at 18), and assert the alleged error "resulted in prejudice to [Parents] and in effect a denial of due process and the statutory protections against unjust and improper State action with respect to terminations of parental rights petitions." (*Id.*)

We note the transcript contains no discussion or mention of the motion to dismiss, and nothing in the record indicates the court officially denied the motion to dismiss. In their brief, Parents claim:

> As of the date of this writing a Motion to Correct and Supplement the Record is pending before the St. Joseph Probate Court seeking an Order for the transcription of certain arguments and discussions held before the Court relating to Parents' Motion to Dismiss, as well as the order of proceedings in the consolidated matters. The arguments and discussion was [sic] treated as "off the record" by the court-reporter, Sandra Pfeifer, who informed counsel that a court order would be required before the matter could be transcribed. Counsel intends to file supplemental matters in support of Appellants' arguments upon receipt of the additional information.

(*Id.* at 17-18 n. 4.). We reject these claims.

First, the court reporter did not decide the discussion would be "off the record." Instead, Grandparents' attorney requested, at the beginning of the February 17 hearing, "Your Honor, I'd ask if the attorneys could approach. I have a matter to take up off the record." (Tr. I at 7.) As there is no mention of a motion to dismiss in the transcript for that

day, during which the court heard testimony regarding the termination of Parents' rights to J.P., arguments regarding the motion to dismiss could have been made only during the "off-the-record" discussion.

Counsel's assertion that arguments and discussion about the motion were treated as off-the-record by the court-reporter misrepresents the record. We remind Parents' counsel that all attorneys are officers of the court and have a duty of candor toward tribunals. *Brown v. State*, 746 N.E.2d 63, 70 (Ind. 2001). That candor is necessary to preserve the integrity of the adjudicative process. *Outback Steakhouse of Fl., Inc. v. Markley*, 856 N.E.2d 65, 85 (Ind. 2006). Indiana Rule of Professional Conduct 4.1(a) provides that an attorney shall not knowingly make a misrepresentation of fact in the course of representing a client, including partially true but misleading statements. *Outback*, 856 N.E.2d at 85.

Regardless why the conversation was off-the-record, Parents invited the error by failing to request the alleged conversation regarding their motion to dismiss be "on-the-record" and thus the argument is waived. *See Witte v. Mundy ex rel. Mundy*, 820 N.E.2d 128, 133 (Ind. 2005) (under invited error doctrine, "a party may not take advantage of an error that she commits, invites, or which is the natural consequence of her own neglect or mistake."); *see also Beeching v. Levee*, 764 N.E.2d 669, 674 (Ind. Ct. App. 2002) (arguments regarding the invited error are waived).

2.      Sufficiency of Evidence Supporting Termination

Parents argue DCS did not present sufficient evidence there was "a reasonable probability that the conditions that resulted in the child's removal or the reasons for

9

placement outside the home of the parents will not be remedied[,]" Ind. Code § 31-35-2-4(b)(2)(B)(i); there was "a reasonable probability that the continuation of the parent-child relationship poses a threat to the well-being of the child[,]" Ind. Code § 31-35-2-4(b)(2)(B)(ii); or termination of their rights was in J.P.'s best interests. Ind. Code § 31-35-2-5(b)(2)(C). We disagree.

a. <u>Reasonable Probability Conditions will not be Remedied</u>

In deciding whether the conditions that resulted in a child's removal will not be remedied, a trial court must judge a parent's fitness to care for his or her child at the time of the termination hearing, taking into consideration evidence of changed conditions. *In re J.T.*, 742 N.E.2d 509, 512 (Ind. Ct. App. 2001), *trans. denied*. It must evaluate the parent's habitual patterns of conduct to determine whether there is a substantial probability of future neglect or deprivation. *Id*. Pursuant to this rule, courts have properly considered evidence of a parent's prior criminal history, drug and alcohol abuse, history of neglect, failure to provide support, and lack of adequate housing and employment. *A.F. v. Marion Cnty. Office of Family & Children*, 762 N.E.2d 1244, 1251 (Ind. Ct. App. 2002), *trans. denied*. The trial court also may consider, as evidence whether conditions will be remedied, the services offered to the parent by DCS and the parent's response to those services. *Id.* A trial court need not wait until a child is irreversibly harmed by a deficient lifestyle such that his or her physical, mental, and social growth are permanently impaired before terminating the parent-child relationship. *In re E.S.*, 762 N.E.2d 1287, 1290 (Ind. Ct. App. 2002).

10

In concluding there was a reasonable probability the conditions resulting in J.P.'s removal and continued placement outside of Parents' care will not be remedied, the trial court found:

11. Visitation between the child and his [Parents] was terminated due to many missed appointments and the failure to call when an appointment was going to be canceled.

\* \* \*

18. Mother's psychological assessment indicated that she was unable to bond with the child due to the negative elements in her general history.

19. During family therapy, [Parents] had difficulty expressing emotion. The therapist concluded that such an emotionless atmosphere would be a very harmful one in which to raise a child.

20. [Parents] were indifferent and unresponsive in their interactions with the child.

21. After visitation with his parents, the child would be returned in soiled clothing, his diaper area unclean, and fecal matter on his skin and clothing.

22. [Parents] had their visitation with the child suspended because they stopped attending the visits.

23. [Parents] failed to maintain a clean house as cat urine was left standing on a table during a visit by a family consultant.

24. Mother failed to comply with the dispositional decree in that she did not:
    a. participate in the Young Mom's Self Sufficiency Program.
    b. follow the recommendations of her parenting assessment.
    c. maintain a clean home.
    d. meeting [sic] the treatment goals of her therapist; and failed to bond with the child.

25. Father failed to comply with the dispositional decree in that he did not:
    a. follow the recommendations from his psychological assessment.
    b. develop an emotional attachment to the child.
    c. visit with the child on a regular basis.

26. [Parents] have each failed to provide any support for the child for the two years the child has been in foster care.

(Appellants' App. at 39.)

J.P. initially was removed from Parents' care because he was malnourished and diagnosed as failure to thrive. During the approximately two years between the date J.P. was put into foster care after his release from the Pediatric Intensive Care Unit and the hearing on termination, J.P. lived with Foster Parents and was no longer considered as failing to thrive. Thus, Parents argue, the conditions resulting in J.P.'s removal had been remedied. While this statement is true, J.P. was not in their custody for the majority of the two years during which the CHINS and termination proceedings occurred, and there was at least one incident in which Parents failed to adequately feed J.P. during their visit with him.

DCS also noted at the beginning of the CHINS adjudication the lack of interaction and bonding between J.P. and Parents. During the termination and adoption hearings, multiple witnesses testified regarding the lack of bonding. Steve Berlin, who supervised J.P.'s home visits with Parents testified the visits "reminded [him] of . . . dropping [J.P.] off at a babysitter's house." (Tr. III at 122.) Berlin testified he was concerned because "[t]he parents didn't seem to be really actively pursuing a relationship with [J.P.]," (*id.* at 129), and any bonding "just seemed to be lacking, seemed mechanical." (*Id.* at 124.)

Parents' therapists indicated Parents were making little progress in their individual and family therapy. Dr. Susan Dunn testified Mother made progress toward an ability to trust people, but "still was very guarded and not always able to access internal information that would allow her to interact with an adult or a child very well." (*Id.* at 157.) Dr. Dunn testified, "we had to go from zero to hundred for improvement, and I don't know if we ever got above 35[.]" (*Id.* at 158.) She indicated:

12

[Parents] have a real problem with emotion regulation and interacting with other people. It's very difficult for them to trust and to open up and just have a regular exchange with just about anyone. . . . It's like putting a wall between them and their child. They can drop what the children need as far as physical things over the wall, but there's never much physical and emotional nurturing and interaction . . . . [J.P.] was removed from the home for failure to thrive, which is directly symptomatic from not having enough nurturing and emotional interaction with parents[.]

(*Id*. at 158-59.)

Parents' arguments to the contrary are invitations to reweigh evidence or judge the credibility of witnesses, which we may not do. *See In re D.D*., 804 N.E.2d at 265 (appellate court may not reweigh evidence or judge credibility of witnesses). Based on the evidence presented by DCS of the lack of Parents' progress in various aspects of their relationship with J.P., we hold the trial court did not err when it found the conditions that resulted in J.P.'s removal had not been remedied by the time of the termination hearing.[3]

### b. Best Interests of the Child

DCS also presented sufficient evidence termination of Parents' rights was in J.P.'s best interests. In determining what is in the best interests of a child, the trial court is required to look beyond the factors identified by DCS to the totality of the evidence. *McBride v. Monroe Cnty. Office of Family & Children*, 798 N.E.2d 185, 203 (Ind. Ct. App. 2003). In so doing, the trial court must subordinate the interests of the parent to those of the child. *Id*.

---

[3] Parents also argue DCS did not meet its burden to prove continuation of the parent-child relationship posed a threat to J.P. However, DCS is required to prove only one of the elements in Ind. Code § 31-35-2-4(b)(2)(B). *See In re B.J.*, 879 N.E.2d 7, 22 n.4 (Ind Ct. App. 2008) (where juvenile court finds both, we may affirm if evidence supports either), *trans. denied sub nom. Watkins/Johnson v. Marion Cnty. DCS*, 891 N.E.2d 42 (Ind. 2008). As that burden was met when DCS proved the conditions that led to J.P.'s removal would not be remedied, we need not address whether Parents' continued relationship with J.P. posed a threat to J.P.

13

Recommendations from the case manager and child advocate that it would be in the child's best interest to terminate the parent-child relationship, in addition to evidence that the conditions resulting in removal will not be remedied, are sufficient to show by clear and convincing evidence that termination is in the child's best interests. *In re M.M.*, 733 N.E.2d 6, 13 (Ind. Ct. App. 2000).

Regarding the best interests of J.P., the juvenile court found:

6. On March 23, 2009, St. Joseph County DCS removed the child from the home of his parents and took him to the hospital where he was admitted into the intensive care unit. The child was found to be "emaciated" and living in "squalor." He was diagnosed as "failure to thrive", [sic] and malnourished. He was non-verbal and did not have the social interaction skills expected of a child his age. He did not walk, and was unable to easily hold himself erect. Upon release from the hospital, he was placed with [Foster Parents] where has [sic] remained for the past two (2) years. He has learned to speak, walk, play, and has been described by all who know him as a lively, engaging child. He has developed a strong attachment to [J.H.] and [T.H.], as well as their biological children, [Ma.H.] and [Mo.H.].

* * *

9. The child has established a strong bond with the foster parents.
10. The child has not bonded with [Parents] nor with his [Grandparents].

* * *

28. The child has an affectionate relationship with [Foster Parents] and is thriving in their home.

(Appellants' App. at 37-39.) Parents argue termination is not in J.P.'s best interest because Parents have made progress throughout the CHINS and termination process, the termination of their parental rights is an extreme measure to be used as a last resort when all other reasonable efforts have failed, and all reasonable efforts have not failed. Specifically, Parents claim DCS' failure to refer the family for a recommended therapy called Theraplay

was fatal to the reunification effort, and Parents assert their parental rights should not be terminated because they were denied the additional service. We disagree.

First, we note Parents' argument they made progress throughout the CHINS and termination process is an invitation to reweigh the evidence presented at the termination hearings, which we cannot do. *See In re D.D.*, 804 N.E.2d at 265 (appellate court may not reweigh evidence or judge credibility of witnesses). As explained above, DCS presented evidence Parents were unsuccessful in completing many aspects of the services offered to them, and could not maintain a significant bond with J.P.

Nor are we persuaded by Parents' argument regarding Theraplay. Parents argue throughout their brief they were denied an opportunity to bond with J.P. because DCS did not submit a referral for Theraplay, a therapy recommended by Dr. Alan Wax, who completed Parents' psychological parenting assessments. After meeting with Parents, Dr. Wax recommended, among other things, individual and family counseling including Theraplay. DCS presented evidence it addressed and offered services such as individual counseling, family counseling, and parenting classes. DCS made a referral to a Theraplay counselor on July 16, 2010, but the appointment was cancelled after DCS decided to proceed with the termination of parental rights.

In *Prince v. Allen County DCS*, we held "the responsibility to make positive changes will stay where it must, on the parent. If the parent feels the services ordered by the court are inadequate to facilitate the changes required for reunification, then the onus is on the parent to request additional assistance." 861 N.E.2d 1223, 1231 (Ind. Ct. App. 2007). We held in

15

*In re B.D.J.*, "a parent may not sit idly by without asserting a need or desire for services and then successfully argue that he was denied services to assist him with his parenting." 728 N.E.2d 195, 201 (Ind. Ct. App. 2000). Such is the case here. Parents have not directed us to evidence they requested Theraplay and DCS denied their request. Therefore, we hold the trial court did not err when it found termination of the parent/child relationship was in J.P.'s best interests.

As DCS presented evidence the conditions which resulted in J.P.'s removal were unlikely to be remedied and termination was in his best interest pursuant to Ind. Code § 31-35-2-4(b)(3), we find no error in the probate court's termination of Parents' rights to J.P.

Issues Regarding Grandparents' and Foster Parents' Adoption Petitions

We will disturb the probate court's decision in an adoption case only when the evidence leads to a single conclusion and the court reached an opposite conclusion. *In re Adoption of D.C.*, 928 N.E.2d 602, 604 (Ind. Ct. App. 2010), *trans denied*. We will not reweigh the evidence presented, but will examine the evidence most favorable to the probate court's decision together with the reasonable inference to be drawn therefrom to determine whether sufficient evidence exists to support the decision. *Id.*

The requirements for an adoption are set forth in Ind. Code § 31-19-11-1(a):

Whenever the court has heard the evidence and finds that:
    (1) the adoption requested is in the best interest of the child;
    (2) the petitioner or petitioners for adoption are of sufficient ability to rear the child and furnish suitable support and education;
    (3) the report of the investigation and recommendation under IC 31-19-8-5 has been filed [by DCS];
                        * * *
    [and]

16

(7) proper consent, if consent is necessary, to the adoption has been given;

* * *

the court shall grant the petition for adoption and enter an adoption decree.

Where, as here, the probate court enters findings of fact and conclusions of law *sua sponte*, we review the sufficiency of the evidence using a two-step process. *Indiana Bureau of Motor Vehicles v. McNeil*, 931 N.E.2d 897, 900 (Ind. Ct. App. 2010*), reh'g denied, trans. denied*. First, we determine whether the evidence supports the probate court's findings, and then we determine whether those findings support the judgment. *Id.* We affirm a judgment entered with findings if it can be sustained on any legal theory supported by the evidence. *Id.*

1.    Adoption Petition by Grandparents Under Cause No. 71J01-1010-AD-129

The probate court denied Grandparents' petition to adopt J.P., finding:

10.    The child has not bonded with [Parents] nor with [Grandparents].
* * *
12.    [Parents] consent to the adoption of their child by [Grandparents].
13.    [Parents] believe that adoption by [Grandparents] will allow them to maintain contact with the child.
* * *
15.    DCS does not consent to the adoption of the child by [Grandparents].
16.    On May 13, 2009, [Grandparents] requested to intervene in the CHINS case and for custody of the child.
17.    [Parents] did not want him placed with [Grandparents] because they did not get along with them.
* * *
27.    [Grandparents] were allowed supervised visitation with the child. Although [Grandfather] took advantage of the visitation times, [Grandmother] missed half of the scheduled visits.
* * *
29.    The child has a lively, affectionate relationship with R.A., maternal grandmother, and a muted, reserved relationship with [Grandparents].

(Appellants' App. at 45- 46.)  Parents and Grandparents argue the trial court erred when it

17

denied Grandparents' adoption petition because DCS unreasonably withheld its consent to adoption and it was not within J.P.'s best interests to be adopted by Foster Parents. We disagree.

Pursuant to Ind. Code § 31-19-9-1(a), not only is the consent of the biological parents required for an adoption, but also "Each person, agency, or county office of family and children having lawful custody of the child whose adoption is being sought." DCS's consent is required unless the probate court finds that DCS's decision is contrary to the best interests of the child. *In re A.D.*, 737 N.E.2d 1214, 1217 n.4 (Ind. Ct. App. 2000).[4]

Parents and Grandparents argue the probate court's denial of Grandparents' petition for adoption was not in J.P.'s best interests. DCS presented evidence Grandparents did not have a strong bond with J.P. and did not notice the scars, bruises, and signs of malnutrition that prompted J.P.'s removal from Parents' home. This was so even though Grandparents visited with J.P. the weekend prior to his removal. Foster Parents presented evidence of progress J.P. made in their care, and testified they maintained a loving and affectionate relationship with J.P. Grandparents, J.P.'s uncle, J.P.'s great-grandmother, and J.P.'s great-uncle all testified adoption by Grandparents would be in J.P.'s best interests because he would be with biological relatives and could continue a relationship with Parents and a sibling.

---

[4] Grandparents cite Ind. Code § 31-34-19-6.1 in support of their argument DCS's consent was unreasonably withheld, and thus the probate court erred when considering DCS's recommendation. While it is correct Ind. Code § 31-34-19-6.1(d) requires the probate court to accept DCS's recommendation unless the recommendation is "(1) unreasonable, based on the facts and circumstances of the case; or (2) contrary to the welfare and best interests of the child," that section governs CHINS proceedings, not termination or adoption proceedings. Thus,the provisions of Ind. Code §31-34-19-6.1 does not apply in the instant case.

18

As we may only consider the facts most favorable to the court's decision, we hold evidence supported the decision adoption of J.P. by Grandparents was not in J.P.'s best interests. Parents' and Grandparents' request for us to reverse the probate court's decision to deny their adoption petition is one to reweigh the evidence, which we may not do. *See Adoption of D.C.*, 928 N.E.2d at 604 (appellate court will not reweigh the evidence). Accordingly, we affirm the probate court's decision to deny Paternal Grandparents' petition for adoption of J.P.

2. Adoption Petition by Foster Parents Under Cause No. 71J01-1009-AD-115

Regarding Foster Parents' adoption petition, the probate court concluded:

2. The consent of [Parents] is not required because they knowingly failed to provide for the care and support of the child when able to do so as required by law. In addition, their consent to the adoption by [Foster Parents] is not required because their parental rights have been terminated under cause number 71J01-1006-JT-000154.

\* \* \*

4. The adoption of the child by [Foster Parents] is in the best interest of the child.

\* \* \*

6. The Petition for Adoption of the child by [Foster Parents] will be granted subject to [a] final hearing on their Petition for Adoption.

(Appellants' App. at 46.) Grandparents and Parents present a myriad of arguments regarding alleged error by the probate court; however, we may not consider those arguments because we do not have jurisdiction over the probate court's decision regarding Foster Parents' petition to adopt J.P.

Pursuant to the relevant portions of App. R. 5, our appellate jurisdiction is limited to

19

appeals from final judgments and interlocutory appeals.[5]

> A judgment is a final judgment if:
> > (1)     it disposes of all claims as to all parties;
> > (2)     the trial court in writing expressly determines under Trial Rule 54(B) or Trial Rule 56(C) that there is no just reason for delay and in writing expressly directs the entry of judgment (i) under Trial Rule 54(B) as to fewer than all the claims or parties, or (ii) under Trial Rule 56(C) as to fewer than all the issues, claims, or parties;
> > (3)     it is deemed final under Trial Rule 60(C);
> > (4)     it is a ruling on either a mandatory or permissive Motion to Correct Error which was timely filed under Trial Rule 59 or Criminal Rule 16; or
> > (5)     it is otherwise deemed final by law.

App. R. 2(H). The probate court's decision to delay its decision on Foster Parents' adoption of J.P. did not dispose of that claim, as the relief requested, adoption of J.P., was neither granted nor denied. Thus, no final judgment exists on Foster Parents' petition to adopt J.P., and we do not have jurisdiction to decide the issues therein pursuant to App. R. 5(A).

Interlocutory appeals may fall into one of two categories: Interlocutory Appeals of Right and Discretionary Interlocutory Appeals. Interlocutory Appeals of Right involve cases:

> (1)     For the payment of money;
> (2)     To compel the execution of any document;
> (3)     To compel the delivery or assignment of any securities, evidence of debt, documents or things in action;
> (4)     For the sale or delivery of the possession of real property;
> (5)     Granting or refusing to grant, dissolving, or refusing to dissolve a preliminary injunction;
> (6)     Appointing or refusing to appoint a receiver, or revoking or refusing to revoke the appointment of a receiver;
>
> (7)     For a writ of habeas corpus not otherwise authorized to be taken directly to the Supreme Court;

---

[5] We also have appellate jurisdiction over agency decisions, but this case clearly is not an agency decision.

20

(8)    Transferring or refusing to transfer a case under Trial Rule 75; and

(9)    Issued by an Administrative Agency that by statute is expressly required to be appealed as a mandatory interlocutory appeal.

App. R. 14(A). Foster Parents' petition for adoption does not fall into any of these categories.

A Discretionary Interlocutory Appeal is an appeal from any other interlocutory order "if the trial court certifies its order and the Court of Appeals accepts jurisdiction over the appeal." App. R. 14(B). The probate court did not certify its order to allow an immediate appeal of Foster Parents' adoption petition, and we were not asked to accept jurisdiction. Thus, our review of the probate court's decision regarding Foster Parents' petition to adopt J.P. is inappropriate, as we do not have jurisdiction over that matter. *See, e.g., Bueter v. Brinkman*, 776 N.E.2d 910, 912-13 (Ind. Ct. App. 2002) (appellate court did not have jurisdiction because appealed order was not a final judgment or appealable interlocutory order). Accordingly, we dismiss that portion of the appeal without prejudice. *See id.* at 914 (lack of appellate jurisdiction pursuant to App. R. 5 results in dismissal of appeal).

## CONCLUSION

Parents did not object to the alleged off-the-record conversation regarding their motion to dismiss the involuntary termination of their parental rights. Thus they invited the alleged error from which they now request relief. Therefore, that argument is waived.

Further, we find no error in the probate court's involuntary termination of Parents' rights to J.P. because DCS presented sufficient evidence of the reasonable probability the conditions resulting in J.P.'s removal would not be remedied and the termination was in

21

J.P.'s best interests.  Accordingly, we affirm the involuntary termination of Parents' rights to J.P.

The probate court did not abuse its discretion when it denied Paternal Grandparents' petition to adopt J.P. because DCS and Foster Parents presented evidence the adoption would not be in J.P.'s best interests.  Accordingly, we affirm the probate court's denial of Grandparents' adoption petition.

We do not have jurisdiction over the probate court's decision regarding Foster Parents' adoption petition because it is neither a final judgment nor an appealable interlocutory order.  Accordingly, we dismiss that portion of the appeal without prejudice.

Affirmed in part, dismissed without prejudice in part.

CRONE, J., and BROWN, J., concur.